UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID COHAIN D.D.S., et al.,<br><br>                              Plaintiffs,<br><br>        - against -<br><br>LAURA KLIMLEY, et al.,<br><br>                              Defendants. | **ECF CASE**<br><br>08 Civ. 5047 (PGG)<br><br>**MEMORANDUM OPINION & ORDER** |
| D. KENT SISSEL, et al.,<br><br>                              Plaintiffs,<br><br>        - against -<br><br>LAURA KLIMLEY, et al.,<br><br>                              Defendants. | **ECF CASE**<br><br>09 Civ. 4527 (PGG)<br><br>**MEMORANDUM OPINION & ORDER** |

PAUL G. GARDEPHE, U.S.D.J.:

    These cases arise from Plaintiffs' purchase of debt instruments ("Notes") from VWE Group, Inc., a greeting card company, before VWE filed a bankruptcy petition on June 1, 2004.  Plaintiffs allege that they have not recovered any money on the Notes, that the Notes were issued as part of an illegal Ponzi scheme, and that the Defendants were complicit in that scheme. Defendant Laura Klimley served as Vice President and as a director of VWE, and Defendant John Palmero served as an officer, director, and controller of VWE.

    Plaintiffs in these actions originally brought claims for violations of the federal securities laws and the RICO statute, as well as for fraud, fraudulent conveyance, waste of corporate assets, self-dealing and deepening insolvency, civil conspiracy, and breach of fiduciary duty.  (See Cohain Cmplt. ¶¶ 44-81; Sissel Cmplt. ¶¶ 44-81)  The Sissel plaintiffs also brought a

claim for violation of Iowa's Blue Sky Law.  (Sissel Cmplt. ¶¶ 82-87)  In a Memorandum Opinion and Order dated September 20, 2010 ("Opinion & Order"), this Court granted Defendants' motions to dismiss the Sissel and Cohain plaintiffs' claims in their entirety.  (08-cv-5047, Dkt. No. 47; 09-cv-4527, Dkt. No. 24)

Plaintiffs in both actions now seek leave to amend their complaints to add several new claims arising under state law:  aiding and abetting fraud, aiding and abetting larceny, conversion, aiding and abetting conversion, and money had and received.  For the reasons stated below, Plaintiffs' motions for leave to amend their complaints will be DENIED.

## BACKGROUND

The Notes held by Plaintiffs – which were offered throughout VWE's existence – had "terms from 90 days to 5 years, interim maturity periods of between 1 and 3 years, and interest rates from 10 to 23%."  ( Proposed Amended Complaint ("PAC") ¶ 13)  However, Plaintiffs allege that VWE never paid the amount owing under the Notes and that "[a]t the time of the [bankruptcy] filing, the aggregate outstanding principal amount of the Notes [was] more than $26 million dollars."  (PAC ¶ 13)  In October 2007, Alicia Eimicke – Klimley's sister and VWE's former president – was indicted on 35 counts of theft, securities fraud and racketeering in connection with the Company's Notes issuance program.  (PAC ¶ 43)  Eimicke pled guilty to those charges on March 28, 2008, allegedly admitting that the Notes issued by the Company were part of an "illegal [P]onzi scheme."  (Id.)

Although the Defendants here were not charged in the criminal proceeding, Plaintiffs allege that they – in their capacities as director and officer, respectively – promoted the issuance of the Notes despite their knowledge of VWE's deepening insolvency.  (PAC ¶ 23)  Plaintiffs also claim to have purchased Notes in reliance on the Defendants' false representations

2

of VWE's financial health, and allege that VWE "instituted and maintained a policy of not disseminating" financial information to purchasers of the Notes.  (PAC ¶¶ 27, 30, 34-40)  Plaintiffs further allege that "there is little or no possibility that the Company will successfully emerge from its Chapter 11 bankruptcy filing or generate any meaningful sum from the sale of its assets for repayment of Plaintiffs."  (PAC ¶¶ 12, 41)

In the Opinion & Order, this Court granted Defendants' motions to dismiss the Cohain and Sissel actions in their entirety.[1]  The Court found that Plaintiffs' Securities Exchange Act claims were time-barred; that their RICO claims were pre-empted by Section 107 of the Private Securities Litigation Reform Act; that the claims for fraudulent conveyance, breach of fiduciary duty, waste of corporate assets, self-dealing, and deepening insolvency belonged to the trustee in bankruptcy rather than to the noteholders; and that the Sissel Plaintiffs' claim under Iowa's Blue Sky Law was improper because New York law governs their action.  (See generally Opinion & Order (08-cv-5047, Dkt. No. 47; 09-cv-4527, Dkt. No. 24))  This Court also found that the Sissel and Cohain claims for fraud and civil conspiracy were inadequately pled.

The Court's Opinion & Order gave Plaintiffs leave to amend their complaints "within ten calendar days," or by September 30, 2010.  (Opinion & Order at 42)  Plaintiffs obtained an extension of this deadline to October 11, 2010.  (08-cv-5047, Dkt. No. 48)  On October 12, 2010, Plaintiffs filed their motions for leave to file an amended complaint (08-cv-5047, Dkt. No. 49; and 09-cv-4527, Dkt. No. 25), and on October 14, 2010, they filed amended motions for leave to file an amended complaint.  (08-cv-5047, Dkt. No. 51; 09-cv-4527, Dkt. No. 27)  A proposed amended complaint is attached as an exhibit to each of Plaintiffs' motions.  (08-

---

[1] The factual background and procedural history of these cases is set forth in greater detail in the Opinion & Order.  (Opinion & Order at 3-7)

3

cv-5047, Dkt. No. 51 (Ex. 1); 09-cv-4527, Dkt. No. 27 (Ex. 1))  The PAC in each case adds causes of action for aiding and abetting fraud, aiding and abetting larceny, conversion, aiding and abetting conversion, and money had and received, but contains no new factual allegations.[2] (PAC ¶¶ 89-106)

## DISCUSSION

### I. STANDARD FOR GRANTING LEAVE TO AMEND

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion to decide whether to grant leave to amend."  Joblove v. Barr Labs., Inc., 429 F.3d 370, 404 (2d Cir. 2005).  Leave to amend may properly be denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc."  Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2007).  "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999).

### II. AIDING AND ABETTING FRAUD

Plaintiffs' proposed claim for aiding and abetting fraud (PAC ¶¶ 89-92) suffers from the same defects as their original fraud claim.  "To establish liability for aiding and abetting fraud, the plaintiffs must show '(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's

---

[2] The proposed amended complaints also re-assert all the claims in the original complaints, despite the Court's Opinion & Order dismissing those claims.

commission.'"  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006) (quoting JP Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) (internal quotation marks and citations omitted)).

Here, Plaintiffs' proposed amended complaints – like their initial complaints – fail to plead the existence of a fraud.  Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  In order to plead fraud adequately under this rule, a plaintiff must "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"  Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co., 375 F.3d 168, 187 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).

In the Opinion & Order, this Court found that Plaintiffs' original fraud claims failed to meet the Rule 9(b) standard:

> The Cohain and Sissel Plaintiffs allege a series of misrepresentations and omissions in general terms.  Their Complaints note that "[t]he Company, at the direction of [Klimley, Palmero and Maxine Eimicke], consistently explained to the Plaintiffs and other investors that this practice [of not providing financial information] was not uncommon among 'family businesses' and [was] not something to be concerned about given the 'long and profitable' nature of the Company."  (Cohain Cmplt. ¶ 29; Sissel Cmplt. ¶ 29)
>
> The Cohain and Sissel Complaints also plead that "the Company actively withheld financial information from the Plaintiffs," and "at the direction of officers and directors of the Company, including Defendants Klimley, Palmero and Maxine Eimicke, actively encouraged Plaintiffs to invest in the Company . . . by making false and misleading statements in regards to the financial status of the Company."  (Cohain Cmplt. ¶ 30; Sissel Cmplt. ¶ 30)
>
> The Complaints further allege that Klimley and Palmero, among others, "took steps to actively conceal the true financial status of the Company" and "actively

> assist[ed]" in the dissemination of false and misleading statements. (Cohain Cmplt. ¶¶ 35, 56; Sissel Cmplt. ¶ 35, 56)
>
> These allegations are not sufficient to satisfy the requirements of Rule 9(b). Although the Cohain and Sissel Complaints each consume nearly fifty pages (exclusive of exhibits), they fail to "identify the speaker" of the alleged false representations, or the person who failed to disclose the required information, and do not "state where and when the statements (or omissions) were made." See Eternity Global Master Fund Ltd., 375 F.3d at 186-87; Odyssey Re Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) ("In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (affirming the district court's dismissal of fraud claims under New York law where plaintiffs did not point to specific misrepresentations on which they relied).

(Opinion & Order at 36-37)

The proposed amended complaints suffer from the same defects. They do not – in any fashion – flesh out the factual allegations that this Court previously found inadequate to state a claim for fraud. Instead, Plaintiffs once again allege a series of omissions and representations in general terms. (PAC ¶¶ 29, 30, 35, 36) Because of the inadequacies of Plaintiffs' factual allegations concerning their aiding and abetting fraud claims, the amendment they propose would be futile.

## II.     AIDING AND ABETTING LARCENY

The proposed amended complaints set forth a claim for "aiding and abetting larceny." (PAC ¶¶ 93-96) Larceny is defined in New York Penal Law § 155.05, and may not be pled as a separate cause of action in a civil case. See Crandall v. Bernard, Overton & Russell, 133 A.D.2d 878, 876 (2d Dept. 1987), appeal dismissed, 70 N.Y.2d 940 (1988) ("[E]xtortion, perjury, attempted grand larceny, harassment and coercion constitute[] criminal offenses specifically defined in the Penal Law and, as such, are improperly pleaded as separate causes of

6

action in . . . [a] civil action."); see also Montalvo v. J.P. Morgan Chase & Co., 2009 WL 4893939, at *6 (N.Y. Sup. Ct. Dec. 18, 2009) ("[C]riminal offenses such as larceny, which are specifically defined in the Penal Law, may not be pleaded as separate causes of action in a civil action").[3]

Assuming arguendo that a private right of action exists for aiding and abetting larceny, Plaintiffs' proposed claim is futile, because Plaintiffs fail to plead the elements of an underlying larceny. Under New York Penal Law § 155.05, a person is guilty of larceny "when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." N.Y.P.L. § 155.05(1). Execution of a scheme to defraud can constitute larceny "by false promise":

> A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or, as the case may be, does not believe that the third person intends to engage in such conduct.

---

[3] "The test, in general, for determining whether [a private] right of action implicitly derives from a criminal statute depends upon satisfaction of all of the following factors: whether plaintiff is of a class for whose benefit the statute was enacted, whether recognition of such a right of action would promote the legislative purpose, and whether creation of such a right would be consistent with the legislative scheme." Sardanis v. Sumitomo Corp., 279 A.D.2d 225, 229 (1st Dept. 2001). Plaintiffs do not cite this test, much less demonstrate that their claim meets the test's requirements. Plaintiffs have likewise not cited any case recognizing such a right of action, and this Court is not aware of any such case.

Plaintiffs cite one unpublished 1950 case for the proposition that "a violation of a penal statu[t]e may also constitute a civil tort." (Pltfs. Reply Br. at 10 (citing Hillside Realty Corp. v. Norton, 198 Misc. 203 (Cty. Ct. 1950)). This citation does not demonstrate that a civil action may be premised on a claim for aiding and abetting larceny.

N.Y.P.L. § 155.05(2)(d). However, "the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed." Id. Instead, a showing of larceny by false promise "may be based only upon evidence establishing that the facts and circumstances of the case are wholly consistent with guilty intent or belief and wholly inconsistent with innocent intent or belief." Id.

As with their fraud claim, Plaintiffs have not pled the substance of the false promises – or of the "representation[s], express or implied" – that form the basis of the alleged larceny. N.Y.P.L. § 155.05(2)(d). Instead, they have generally alleged that the Company "explained to the Plaintiffs and other investors that [their allegedly opaque business practices] [were] not uncommon among 'family businesses,'" that "the Company actively withheld financial information from the Plaintiffs," and that officers of the Company – including Defendants – "actively encouraged Plaintiffs to invest in the Company . . . by making false and misleading statements in regards to the financial status of the Company." (PAC ¶¶ 29-30)

These allegations do not identify with particularity any "representation, express or implied, that [the Defendants] or a third person will in the future engage in particular conduct." N.Y.P.L. § 155.05(2)(d). Nor do they identify the speakers of any alleged misrepresentations, instead referring in general terms to misrepresentations by "the Company." Finally, they do not present a version of the facts that is "wholly inconsistent with innocent intent or belief." N.Y.P.L. § 155.05. Accordingly – even assuming that a private right of action exists for "aiding and abetting larceny" – Plaintiffs have not sufficiently pleaded the elements of an underlying larceny. As a result, their proposed claim for aiding and abetting larceny is futile.

### III. CONVERSION

The proposed amended complaints also add claims for conversion and for aiding and abetting conversion.[4] (PAC ¶¶ 97-102) Plaintiffs allege that Defendants "unlawfully converted the amount of Plaintiff's investments that was stolen from Plaintiffs for their own purposes and in order to illegally enrich themselves and their family members by way of the payments and distributions made to the Defendants or for the benefit of the Defendants." (PAC ¶ 98)

The conversion claims are futile. "[T]o establish a cause of action in conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question. . . . Tangible personal property or specific money must be involved."

---

[4] In their reply brief, Plaintiffs ask that the conversion claims in their proposed amended complaints be treated as claims for equitable disgorgement. See Pltfs. Reply Br. at n. 9 ("Plaintiffs agree that Plaintiffs' claims for conversion and money had and received should be more properly captioned as a claim for equitable disgorgement. [If given leave to amend], Plaintiffs will withdraw their claims for conversion, aiding and abetting conversion and money had and received and assert in their place a claim for disgorgement.").

As noted above, Plaintiffs' original complaints were dismissed on September 20, 2010, and Plaintiffs filed their motions for leave to file an amended complaint on October 14, 2010. Plaintiffs' proposed amended complaints contain no claim for equitable disgorgement. Indeed, Plaintiffs did not reference equitable disgorgement until their reply brief. Plaintiffs may not salvage their motions to amend by raising new arguments or claims in a reply brief. See Graham v. Sabol, 734 F. Supp. 2d 194, 199 n.5 (D. Mass. 2010) (where plaintiff raises a proposed amendment for the first time in his reply brief, "[i]t is neither fair nor appropriate to construe the motion for leave to amend as seeking leave to amend to include [the amendment raised for the first time in the reply brief]"); Sauer v. Xerox Corp., 173 F.R.D. 78, 80 (W.D.N.Y. 1997) (denying leave to file a "revised third amended complaint," while motion for leave to file third amended complaint was still pending, on the ground that "[Plaintiff]'s failure to adequately plead his claims despite sufficient opportunity to do so is, by itself, a sufficient basis for denying leave to amend.")

Independence Discount Corp. v. Bressner, 47 A.D.2d 756, 757 (2d Dept. 1975) (dismissing conversion claim for failure to pay "amounts due" under an agreement); see also In re Harvard Knitwear, Inc., 153 B.R. 617, 625 (Bankr. E.D.N.Y. 1993) ("[c]onversion arises out of an unauthorized exercise of dominion over specifically identifiable property of a defendant"). Because Plaintiffs' proposed conversion claims are based on the "amount of [their] investments," rather than on specifically identifiable property, they would be subject to dismissal.

The Cohain Plaintiffs' conversion-based claims are also untimely. In New York, the limitations period applicable to a conversion claim is three years from the time that the cause of action accrues. Mirvish v. Mott, 75 A.D.3d 269, 269 (1st Dept. 2010). "A conversion cause of action accrues upon the occurrence of some affirmative act – asportation by respondent or another person, denial of access to the rightful owner or assertion to the owner of a claim on the goods, sale or other commercial exploitation of the goods by respondent." Id. In the PACs, Plaintiffs plead that the Defendants converted their money "by way of the payments and distributions made to the Defendants or for the benefit of Defendants." (PAC ¶ 98) The PACs, however, assert that the last distributions to Klimley and other members of the Eimicke family were made in May 2004. (PAC ¶¶ 20-21) The original complaint in the Cohain action was filed on June 2, 2008. (08-cv-5047, Dkt. No. 1). Accordingly – even assuming that the date of the proposed amended complaints would relate back to the date of the original complaints – the conversion claims fall outside the three-year statute of limitations.

## V.     CLAIM FOR MONEY HAD AND RECEIVED

The proposed amended complaints also add claims for money had and received. (PAC ¶¶ 103-06) This claim is also futile because – as with their conversion claim – Plaintiffs have not established a superior right of possession to the specific monies at issue. "The essential

elements of a claim for money had and received are that: '(1) defendant received money belonging to plaintiff; (2) defendant benefited from the receipt of the money; and (3) under the principles of equity and good conscience, defendant should not be permitted to keep the money.'" In re Ames Dept. Stores, Inc., 2008 WL 7542200, at *9 (S.D.N.Y. June 4, 2008) (quoting Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998)). Accordingly, a plaintiff must "establish ownership interest or a superior title to the Proceeds in order to succeed on its money had and received claim." Id.; see also Grain Traders, Inc. v. Citibank, N.A., 960 F. Supp. 784, 793 n. 12 (S.D.N.Y. 1997)) (money had and received claim "requires that a plaintiff have an ownership interest in or immediate superior right to possession of the monies"); Mia Shoes, Inc. v. Republic Factors Corp., 1997 WL 525401, at *6 (S.D.N.Y. Aug. 21, 1997) (money had and received claim requires establishment of an "ownership interest" in the funds).

        Here, Plaintiffs state in each PAC that "the Company . . . made substantial advances to Company officers and directors . . . many from the general operating account of the Company." (PAC ¶ 20) They do not, however, allege that they had an immediate superior right of possession to the monies in that account. While Plaintiffs generally allege that VWE benefited from their purchase of the now-unpaid Notes, this is insufficient to establish that Plaintiffs had an immediate superior right to possession of the monies that were allegedly improperly paid to Klimley. See In re Ames, 2008 WL 7542200, at *9 (rejecting plaintiff's argument that "[Plaintiff] can pursue a money had and received claim against [defendant] on the theory that [defendant] received money from [third party] that was due to [plaintiff]."). Accordingly, Plaintiffs' proposed claim for money had and received would be futile.

\*       \*       \*       \*

Each of Plaintiffs' new claims is futile. "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." Hayden, 180 F.3d at 53.

## VI.    BAD FAITH

Denial of Plaintiffs' motions for leave to amend is also appropriate because of Plaintiffs' failure to explain their delay in asserting the new claims. Leave to amend may be denied based on Plaintiffs' "undue delay, bad faith or dilatory motive." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2007); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 125 (2d Cir. 2008) (leave to amend should not be granted where circumstances indicate "bad faith or dilatory motive"). "The court plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). Moreover, "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay, and the court is free to conclude that ignorance of the law is an unsatisfactory excuse." Id. (internal citations omitted).

Here, the original complaints were filed on June 2, 2008 and May 12, 2009. The proposed amended complaints were not submitted to this Court until October 14, 2010. Given that the PACs contain no new factual allegations, it is not clear – and Plaintiffs have made no attempt to explain – why the new causes of action were not asserted in the original complaints. Even if the new causes of action – premised on conduct that took place more than seven years ago – were meritorious (which, as noted above, they are not), this Court would not grant leave to amend, given Plaintiffs' unexplained delay in asserting the new claims.

## CONCLUSION

Plaintiffs' amended motions for leave to amend in the Sissel and Cohain actions (09-cv-4527, Dkt. No. 27; and 08-cv-5047; Dkt. No. 51) are DENIED. Plaintiffs' original motions for leave to amend in these actions (09-cv-4527, Dkt. No. 25; and 08-cv-5047, Dkt. No. 49) are DENIED as moot. The Clerk of the Court is directed to terminate the motions.

Dated: New York, New York
      August 30, 2011

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge